UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AVON E. FAIR,

        Plaintiff,

- against -

VERIZON COMMUNICATIONS, INC., et al.,

        Defendants.

REPORT AND
RECOMMENDATION

12 Civ. 6130 (LAK) (RLE)

**To the HONORABLE LEWIS A. KAPLAN, U.S.D.J.:**

*Pro se* plaintiff Avon E. Fair ("Fair") filed this action against Defendants Verizon Communications, Inc., Verizon, Inc., and Verizon, et al. ("Verizon") on July 30, 2012.[1] She filed her Amended Complaint on August 3, 2012.[2] Fair seeks injunctive relief and unspecified damages for Verizon's provision of poor quality telephone service and subsequent total disruption of her telephone service. (Am. Compl., at 12.)

This case was referred to the undersigned on September 5, 2012, for general pretrial and dispositive motions. (Docket No. 8.) Before this Court is Defendants' motion to dismiss Fair's Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Docket No. 19.)

---

[1] Defendants maintain that Verizon, Inc. and Verizon, et al. do not exist. (Schapker Affidavit, at 3.) Nonetheless, for the purposes of this motion to dismiss, when referring to the named defendants as a group, the Court will refer to them as "Verizon."
[2] Fair attached a copy of her Complaint to her Amended Complaint. Defendants argue that Fair's Amended Complaint supersedes her original Complaint, and thus the Court should only consider Fair's Amended Complaint. The Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted). Therefore, the Court will construe the Complaint as an exhibit to the Amended Complaint, and incorporate the statements therein by reference.

For the following reasons, I recommend that Verizon's motion to dismiss pursuant to Rule 12(b)(1) be **GRANTED**, and if the motion to dismiss under 12(b)(1) is **DENIED**, I recommend that the motion to dismiss pursuant to Rule 12(b)(6) be **DENIED**.

## I. BACKGROUND

The facts herein were provided by Fair in her Amended Complaint, and are presumed true for the purposes of the motion. Fair receives residential telephone service through Defendant Verizon Communications ("Verizon") at her address at 792 Columbus Avenue, Apt #2S, New York, New York. (Am. Compl., at 10.) On or about July 17, 2012, Verizon interrupted in and outgoing telephone service, resulting in Fair being unable to reach 911, medical services, or any party. (*Id.*) Fair is disabled. (*Id.*) On July 18, 2012, Fair received a phone call from a marketing representative at Verizon who attempted to sell her new products, and acknowledged the disruption of service. (*Id.*) The marketing representative told Fair that she would only be able to access telephone service by upgrading to the new telephone service system. (*Id.*) Fair declined to purchase the new system. (*Id.*) Verizon promised to send Fair a repair crew on July 25, 2012, but then "declined to do so." (*Id.*) As of July 30, 2012, Fair has been without telephone service. (*Id.* at 11.) Fair is current in her bills except for a bill that covered the period when the disruption occurred. (*Id.*)

On August 1, 2012, a Verizon employee who identified himself only as Tyrone came to Fair's house to examine her telephone equipment and wall connection. (*Id.* at 2.) Tyrone told Fair that she had to purchase new telephone equipment because her current equipment is no longer acceptable to the Verizon delivery method. (*Id.*) The new Verizon delivery method, "Verizon FIOS," "bundles cable, Internet, and telephone services" together and is "100% higher in pricing" than what Fair originally contracted for with Verizon. (*Id.*)

Prior to the disruption of service, and beginning with the introduction of the Verizon FIOS system into Fair's building, Fair's telephone service became "poor in quality and unpredictable in communication capability." (*Id.*) Fair complained about hearing "buzzing" and "extreme static noise." (*Id.*) Verizon repairmen visited Fair's home to make repairs, but the poor service continued. (*Id.*) The Verizon repairmen also informed Fair that she had to sign up for Verizon FIOS to have normal telephone service. (*Id.*) Beginning with the introduction of the Verizon FIOS system, Fair has also experienced poor television service. (*Id.*)

Verizon has "aggressively marketed" the FIOS package to residents in Fair's building. (*Id.*) Verizon is the only telephone, Internet, or cable service provider that has been allowed access to Fair's apartment complex. Other Verizon customers have also experienced disruption in service. (*Id.* at 11.) Neither Fair nor these other customers were notified of any "anticipated repairs, upgradings, or disruptions" prior to the disruption of their service. (*Id.* at 11.)

As a result of Verizon's actions, Fair suffered stress, which aggravated her recovery from laser surgery and caused her vision to become impaired. (*Id.* at 10.) As a result of the impairment of her vision, Fair has been required to schedule another surgery for her eyes, and has also experienced an increase in blood pressure. (*Id.* at 10.)

Fair alleges that Verizon has disrupted her service to "gain an unfair trade competition advantage at the expense of [Fair] and other customers in its network." (*Id.* at 1.) Fair alleges that Verizon seeks to preemptively limit competition from Google, which has recently launched a Fiber Optics Network that competes directly with Verizon FIOS and will eventually include telephone service. (*Id.*) She alleges that Verizon seeks to limit competition from Google by forcing its non-FIOS customers to buy new equipment that will not be compatible with Google Fiber Optics Network. (*Id.*)

## II. DISCUSSION

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

#### 1. Applicable Standards for Dismissal under Rule 12(b)(1)

In considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true factual allegations in the complaint. *Shipping Financial Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Where the court must decide jurisdictional issues in dispute, it may look to "evidence outside the pleadings, such as affidavits." *Filetech S.A. v. France Telecom, S.A.*, 157 F.3d 922, 932 (2d Cir. 1998) (quoting *Antares Aircraft v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991), *vacated on other grounds*, 505 U.S. 1215 (1992)).

A Rule 12(b)(1) motion may be appropriate when a plaintiff's federal claim is not even minimally plausible. *See Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 99 (2d Cir. 1990). In most cases, the court will consider a 12(b)(1) motion before ruling on any other motions to dismiss, since dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot. *See United States ex rel Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993), *cert. denied sub nom. Kreindler & Kreindler v. United Technologies Corp.*, 508 U.S. 973 (1993); *see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

#### 2. The Motion in this Case

Verizon Communications argues that the Court lacks subject matter jurisdiction over Fair's claims because both parties are residents of New York and the case "does not represent a reasonable probability" of meeting the $75,000 threshold for diversity jurisdiction, and because

4

the claims do not raise a federal question for the purposes of federal question jurisdiction. (Def. Mem. of Law (Def. Mem.), at 6.)

### a. Both Fair and Verizon Communications are residents of New York.

For the purposes of diversity jurisdiction, a corporation "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C.§ 1332 (c)(1). There must be complete diversity among all of the parties for the Court to have subject matter jurisdiction. *See e.g.*, *Petroleum & Energy Intelligence Weekly, Inc. v. Liscom*, 762 F. Supp. 530, 531 (S.D.N.Y. 1989) (citing *Strawbridge v. Curtiss*, 7 U.S. 287 (1806) (diversity must be complete for diversity jurisdiction to exist); *Hughes v. United Engineers & Constructors, Inc.*, 178 F. Supp. 895 (S.D.N.Y. 1959) (finding no diversity jurisdiction where a resident of Pennsylvania sued a corporation incorporated in Delaware with its principal place of business in Pennsylvania).

Defendant Verizon Communications, Inc. ("Verizon Communications") is a corporation, incorporated in Delaware, (Schapker Aff., at 1, Am. Compl., at 9), with its principal place of business in New York (Schapker Aff., at 2). Verizon alleges that Defendants Verizon, Inc., and Verizon, et al. do not exist. (Schapker Aff., at 2.) Fair lists the address of Defendant Verizon Inc. as 145 West Street, New York, NY and its state of citizenship as New York. (Am. Compl., at 9.) Fair does not list any address or state of citizenship for Defendant Verizon, et al. (*Id.*) Verizon Communications claims that the proper defendant in this action should be Verizon New York, Inc. (Schapker Aff., at 2.) Verizon New York, Inc. ("Verizon New York") is a corporation that is incorporated in and has its principal place of business in New York. (*Id.*)

Verizon Communications is a corporation incorporated in Delaware with its principal place of business in New York. (*Id.* at 1.) Verizon New York is a corporation incorporated in

5

New York with its principal place of business in New York. (*Id.* at 2.) Relying on *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), Fair maintains that "Verizon's"[3] principal place of business is its "nerve center," which is in New Jersey. Fair argues that "[i]t is an industry standard, that technology-driven businesses define their 'nerve center' as the key operations driving the underlying technology." (Pl. Mem., at 7.)

In *Hertz Corp v. Friend*, the Supreme Court held that the term "principal place of business" in Section 1332(c)(1) "is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is . . .the corporation's 'nerve center.'" 559 U.S. at 92-93. The Court held that "in practice," the "nerve center" will generally be the corporation's headquarters, "provided that the headquarters is the actual center of direction, control and coordination." *Id.* at 93. The "nerve center" is a single location, *id.*, equivalent to a "corporate 'brain.'" *Id.* at 95. A nerve center is not the most significant place where a defendant's general business activities take place. *Id.* "[I]f the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." *Id.* at 96.

This example is particularly relevant to the case at hand. Fair argues that Verizon's "nerve center" is in New Jersey because that is where its "key operations driving the underlying technology take place." Fair's argument is without merit. The offices of the chief executive officers of both Verizon Communications and Verizon New York are at 145 West Street, New

---

[3] Fair does not clarify which defendant is "Verizon." She asserts that Verizon is incorporated in the state of Delaware, and therefore she appears to be referring to Verizon Communications. However, she also states that "a holding company," which she acknowledges Verizon Communications is, cannot have a "nerve center," in the context of discussing Verizon's "nerve center." This Court will construe Verizon to be Verizon Communications. The same analysis would apply if Verizon referred to any other subsidiary of Verizon Communications.

York, New York. (Schapker Aff., at 2.) The "corporate 'brain'" for both Verizon Communications and Verizon New York is New York, not New Jersey.

### b.     Fair meets the $75,000 threshold for diversity.

Verizon argues that even if there were complete diversity between the parties, the Court does not have diversity jurisdiction because Fair has not met her burden of showing a "reasonable probability" that the amount in controversy meets the $75,000 threshold for diversity jurisdiction. *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (1975)). *See* 28 U.S.C. § 1332(a).

The Second Circuit recognizes a "rebuttable presumption that the face of the complaint is a good faith representation of the amount in controversy." *Wode-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.2d 59, 63 (2d Cir. 1999). To rebut this presumption, the defendant must show that the complaint was so "patently deficient as to reflect to a legal certainty that [the plaintiff] could not recover the amount alleged, or that damages alleged were feigned to satisfy jurisdictional minimums." *Id.* Verizon claims that Fair cannot show a reasonable probability that the amount in controversy is met because her Amended Complaint makes no reference to damage, other than stating that the Verizon FIOS package is more expensive than her current telephone package. (Def. Mem., at 9.) Verizon further asserts that Fair's original Complaint also cannot meet the standard because, although it alleges that she suffered vision impairment due to stressful conditions caused by the defendants, a claim for such damages is not recoverable in a breach of contract action under New York law. (*Id.*)

As discussed above, the Court construes Fair's Amended Complaint as including the statements in her Complaint. In her Amended Complaint, Fair lists her damages as "vision impairment due to the stressful conditions imposed by Defendants," prolonging of her healing

7

process from a recent laser surgery treatment for her left eye, and aggravation of her vision to the point that she has "had to reschedule for new surgical treatment due to the stress and rise in blood pressure resulting from [Defendants' actions]." (Am. Compl., at 10.) Fair also references the higher cost of the Verizon FIOS package as part of her damages. (*Id.* at 2.) In her response to Verizon's motion to dismiss, Fair alleges damages based on higher cell phone bills and pecuniary damages to her home-based business. (Plaintiff's Affirmation in Opposition (Pl. Aff.), at 6.) She states that she was involved in several business projects at the time of the disruption that "would have generated income greater than $75,000." (*Id.*) Finally, Fair maintains that, as a disabled person, her health and safety were put in jeopardy by the disruption because she was unable to access emergency services. (*Id.*)

Fair has shown to a reasonable probability that the amount in controversy meets the $75,000 threshold for diversity jurisdiction. Her allegations regarding lost income alone meet the $75,000 threshold. Furthermore, the Defendants have not shown that the Amended Complaint was so "patently deficient as to reflect to a legal certainty that [the plaintiff] could not recover the amount alleged, or that damages alleged were feigned to satisfy jurisdictional minimums." *Wode-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.2d 59, 63 (2d Cir. 1999).

Nevertheless, because there is not complete diversity between the parties, the requirements of diversity jurisdiction have not been met.

      **c.**     **Fair's Amended Complaint does not raise a federal question.**

Federal courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. *See e.g., Arbagh v. Y & H Corp.*, 546 U.S. 500, 513 (2006) ("A plaintiff properly invokes § 1331 jurisdiction when she

pleads a colorable claim 'arising under' the Federal Constitution or laws."). Verizon argues that the Court does not have federal question jurisdiction over Fair's claims because Fair "offers no such basis in her pleadings and none is reasonably suggested." (Def. Mem., at 10.)

Fair maintains that her claim arises out of Section 255 of the Telecommunications Act of 1996. (Pl. Mem., at 8.) Fair claims that Verizon has violated Section 255 by failing to provide her access to telephone services even though its employees were aware of her disabled status. (*Id.*) She argues that Verizon is subject to suit under Section 255, notwithstanding Verizon's arguments that the tariffs Verizon files with the Public Service Commission supersede all common law remedies. (*Id.* at 9.) She further asserts that the prohibition of common law remedies does not apply to cases that present a federal question. (*Id.*) Fair claims that the "Second Circuit did not rule . . . that telecom providers have unconditional powers granted by the Public Utility Commission of New York, to act in a discriminatory, or arbitrarily [sic] manner against the disabled." (*Id.*)

Fair's reliance on the Telecommunications Act is misplaced. Section 255 of that act provides no private right of action. 47 U.S.C. § 255(f). *See Coalition of the Institutionalized Aged and Disabled v. Verizon Communications, Inc.*, No. 06 Civ. 1706 (DAB), 2009 WL 928101, *5 (S.D.N.Y. Mar. 31, 2009) (stating that there is "no private right of action" under 47 U.S.C. § 255).

For the foregoing reasons, this Court does not have subject matter jurisdiction over Fair's claims. Therefore, I recommend that Verizon's motion to dismiss pursuant to Rule 12(b)(1) be granted.

**B.     Motion to Dismiss Pursuant to Rule 12(b)(6)**

   **1.     Applicable Standards of Dismissal under Rule 12(b)(6)**

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). The test is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). The factual allegations in the complaint are presumed to be true, and all reasonable inferences are drawn in the plaintiff's favor. *See EEOC v. Staten Island Sav. Bank*, 207 F.3d 144 (2d Cir. 2000).

Where a plaintiff proceeds *pro se*, a court must construe the complaint liberally and "interpret [it] to raise the strongest arguments that [it] suggest[s]." *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir.1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). *See also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (holding that *pro se* complaints should be "held to less stringent standards than formal pleadings drafted by lawyers"). However, "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation, fails to state a claim under Rule 12(b)(6)." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994) (quoting *Martin v. N.Y. State Dep't of Mental Hygiene*, 558 F.2d 371, 372 (2d Cir. 1978)); *see also Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (holding that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning").

## 2. The Motion in this Case

Fair has sued Verizon for breach of contract, violation of New York General Business Law § 349(a),[4] violation of 47 U.S.C. § 255, and fraud. (Pl. Mem., at 10.) Fair raises the latter three claims for the first time in her opposition to Verizon's motion to dismiss. The Court will construe them as raised by her Amended Complaint. As discussed above, because there is no private right of action under Section 255 of the Telecommunications Act, 47 U.S.C. § 255(f), Fair's Amended Complaint fails to state a claim under that section.

Verizon argues that Fair has failed to state claims for breach of contract, General Business Law § 349(a), and fraud, and that such claims are superseded by the tariffs filed with, and approved by, the New York State Public Service Commission that govern the provision of telecommunications services. (Def. Mem., at 7.) Through the doctrine of "primary administrative jurisdiction," the local tariffs filed with the New York State Public Service Commission do supersede "all common law remedies regarding the rates, terms, and conditions of regulated services," *Am. Tel. & Tel. Co. v. City of New York*, 83 F.3d 549, 555-56 (2d Cir. 1996), and remedies under General Business Law § 349(a), *Porr v. NYNEX Corp.*, 230 A.D.2d 564, 576, 660 N.Y.S.2d 440 (1997). However, "while the Commission has exclusive jurisdiction over public utility rates," Section 93 of the Public Service Law "provides for direct access to the courts . . . where a telephone corporation violates the 'law of the State of New York by this chapter,' . . . [or] where an 'order of the commission' is disobeyed." *Van Dussen-Storto Motor Inn, Inc., v. Rochester Tel. Corp.*, 42 A.D.2d 400, 403 (1973), *aff'd sub nom. Van Dussen-Storto Motor Inn, Inc. v. Rochester Tel. Corp.*, 34 N.Y.2d 904 (1974). *See Warren v. New York Tel. Co.*, 70 Misc. 2d 794, 795 (Civ. Ct. 1972) (finding no liability under Public Service Law Section

---

[4] Fair appears to raise her breach of contract claim through the New York General Business Law. (Pl. Mem., at 10.)

93 because plaintiff did not demonstrate that telephone company acted with gross negligence in failing to provide adequate service). While Fair has not alleged facts to state a claim under the Public Service Law, it may be possible for her to do so. If her Amended Complaint is not dismissed pursuant to Rule 12(b)(1), she should be granted leave to amend.

### III. CONCLUSION

For the foregoing reasons, I recommend that Verizon's motion to dismiss pursuant to Rule 12(b)(1) be **GRANTED**, and if the motion to dismiss under 12(b)(1) is **DENIED**, I recommend that the motion to dismiss pursuant to Rule 12(b)(6) be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: March 13, 2014**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

**MAILED BY CHAMBERS**

12